on the calendar before the panel today. However, four of those cases are being submitted on the briefs without oral argument. I will just, for the record, note those four cases. The first one is number 20071445, In re Stauffer. The second one is number 20083071, White v. Department of the Army. The third one is number 2008-3143, Motley v. Department of the Navy. And the final case that's being submitted is number 20085040, Watson v. The United States. Again, those cases are being submitted on the briefs without oral argument. The first case in which we'll hear oral argument this morning is number 2007-3264, Foster v. Department of Defense. Mr. Thompson? Yes, sir. I just want to check before you start. I see that you reserved ten minutes for your main argument and five minutes for rebuttal. Is that correct? That is correct. And you understand how the lighting system works? It's been a while since I've argued here, but I'm sure I'll come back. Okay, well, I'm sure you remember. You can step up to the podium and start your argument whenever you're ready. Good morning, Your Honors. We are here on an appeal of the Maritime System Protection Board on order of the Honorable Sarah Clement, Administrative Law Judge, in the matter of Foster v. Department of Defense. My name is Richard L. Thompson II, for the record. Foster consents that the Board committed a reversible error when Ms. Clement gave deference to testimony which we argue was disputed. The Board findings, which are not supported by substantial credible evidence, are subject to review by this body. And in order to determine whether the Maritime System Protection Board's findings are supported by substantial evidence, it's important to canvass the entire record. Thompson, your main, and I'm jumping in on you here at the start because time goes quickly, so my apologies. But your main complaint is with the administrative judge's determination that the testimony of Ms. Santiago, I guess it was? Yes. That Sergeant Santiago was credible, is that correct? That is correct. Now you, one thing I wanted to get a handle on, you say that it was not credible, but the A.J. heard the testimony, was free to believe or disbelieve it, and did so. And it's a very exacting standard of review. How do you get over that standard of review? That the administrative law judge, in failing in her discussion of her review of credibility to address certain factors which go directly to Santiago's credibility and her truthfulness, specifically in her admittedly false statement to her supervisors concerning how this interaction began and the nature of the relationship that she maintained with Mr. Foster, begins a trail of testimony that she gave that brings her entire testimony into question. Well, that's your view. But what is it that's so compelling in the record that we have before us that suggests that the A.J. was wrong? Well, there are two segments that we're going to look at, and I'd like you to look at both the failure of the administrative law judge to examine the entire set of factors that are included in assessing the credibility of a party concerning issues regarding sexual harassment. Well, when you say failure to look at the set of factors, are you talking about failure to look at the right law or failure to look at the right facts? Both. I think she failed to examine the law on sexual harassment, which is by its very nature essential elements of the claim of the charge for which she was removed. In failing to determine whether or not the conduct on Ms. Dash, one of the parties, and Ms. Santiago, whether or not the relationship was such that the conduct was necessarily uninvited or necessarily unwanted. Well, is it your view that there necessarily has to be a legal conclusion of sexual harassment in order for the agency to have taken the action they took here? I think it would be consistent with the Luongo case. We decided by both parties that in order for her to reach a finding that the removal action was proper, a finding on the ultimate issue of the charge and an essential element of the claim is necessary. And following Luongo, I guess it's a good time to go into that. Let me ask you, though, Mr. Thompson, in response to Judge Prost's question, you indicated that this was a sexual harassment case. Well, actually, there were two charges. There was a charge of inappropriate conduct in the workplace, I think, and then there was the perjury charge. But there really wasn't, as I understood it, a sexual harassment charge. I mean, a lot of the conduct that took place, particularly between Sergeant Santiago and your client, appears to have been consensual. You know, the meetings they had in the cubicle and so forth and the testimony of the contractor who observed these various occurrences. And it wasn't so much she was being harassed as he, along with her, was engaging in inappropriate conduct in the office. I mean, doesn't that make it a little bit different from a sexual harassment case? I mean, it doesn't seem that his advances towards her were totally unwarranted, but rather he was doing in the office what he should have done in private. Yes, I would agree, accepting that in looking at what Colonel Etheridge, who was the deciding official's factors were from what he cited and what's cited in the proposed removal as AR-690-700, Chapter 751, Table of Penalties for Various Offenses, with respect to the conduct of becoming a federal employee, there is necessarily a specification concerning immorality, indecentness, or disgraceful conduct. I'm reading from that section. Wait, which section are you referring to? I'm looking at A-3, which talks about the charges. I'm reading from the actual. If we look at... Well, I think they're cited here, the standards governing conduct, and it cites several things. Which one? I'm citing from what was referenced by the deciding official from his rationale in looking at the Douglas factors. He specifically cited A&R-690-700, Chapter 751, the Table of Penalties for Various Offenses, and with respect to that Table of Penalties, from which he made a decision that removal was the proper penalty. It specifically specifies a need for immorality, indecentness,  that is, unbecoming a federal employee. You could have that conduct without harassment. I think the Luongo case supports that. But it would necessarily, I believe, require some statement as to what constituted immoral, what constituted indecent, what constituted disgraceful conduct, and there was no discussion on those factors. Consistent with his Luongo looking at a case where it was a matter of racial discrimination or an allegation of a statement that was racially charged, where the board failed to make a finding that the statement was, in fact, racially charged or racially discriminatory, this court, in fact, ultimately had to decide that it was improper to take a removal action in the context where perhaps the statement was racially charged but the greatest penalty that was reasonable in a context where there was no ultimate finding that the statement, in fact, was racially discriminatory should be something short of removal. Bringing sexual harassment back into the context, looking at the proposed removal paragraphs 2D, 2E, and 4A, they all speak directly to sexual harassment. In 2D, in the specification for the charge, there's an allegation that Ms. Dash told investigators that comments concerning Lace constituted unwelcome sexual advances. 2E says SFS Santiago stated that she was in fear of reprisals because if she came forward to foster with a case of sexual harassment, and in 4E, they say sexual harassment, they specify as a form of gender discrimination constituting unwelcome sexual advances. Thus, notwithstanding the fact that they have set forth a charge of conduct on becoming a federal officer, all of the specifications concerning the action which gave rise to that charge were specifically dealing with sexual harassment. Okay, but where does that lead you, then? That leads me to a context that the nature of the behavior being unwanted or uninvited is a necessary component of that classification. In order to make a finding that this was conduct on becoming regarding sexual harassment, you must examine the sexual harassment context. In Title VII, it's properly defined the bounds of what actions or behaviors constitute unwanted behavior or improper behavior in a context of sexual appropriateness. Well, is it your position that the conduct that's outlined in this proposed removal letter didn't occur, or that even if it occurred, it wouldn't rise to the level of sexual harassment? That even if it occurred, it didn't rise to the level of sexual harassment. There is some concern as to whether or not the conduct, in fact, occurred. Certainly with respect to Specification III, it was a clear denial that he, in fact, took the actions which gave rise, that he'd be charged to Specification III, that he kissed and embraced Sergeant Santiago without her consent. Foster specifically says in his testimony on page 140 that this just is not true, that it never occurred. Yeah, but as Judge Shaw suggested in his earlier questioning, how far does that get you if there's a conflict in the testimony and the A.J. who saw the witnesses in that testimony decredited one person over another? Well, it gets you to an issue where you have to, what is necessarily examined in addressing what gave rise to this decision-maker's removal decision. And I think the decision-maker's removal decision, notwithstanding whether or not this behavior occurred or set forth and the credibility that was given, given the context that these behaviors occurred but were less than sexual harassment, and examining the rationale of the decision-maker also set forth in the proposed removal document, Colonel Etheridge specifically states that the employees who made the comment complained that returning to work would create a hostile environment as one of his reasons for granting removal. Yet neither Santiago nor Dash made a complaint for several months. Santiago was, at least as of March 2006, had been in a relationship and alleges that she in fact engaged in sexual relations with Mr. Foster. Commander Etheridge testified on page 56 of the transcript that when the matter was brought to him, he was informed that Santiago and Foster were friends, whereas it appeared that at least as late as September, October 2005, that there had been an alleged sexual encounter. Within the scopes of those actions, the context for the administrative law judge to believe that it was reasonable to believe that the return of Foster to the work environment would create a hostile work environment for Sergeant Santiago appears to be untrue. You're about a minute and a half into your rebuttal. Do you want to continue or do you want to hold, save your, retain your five minutes? Under these circumstances, I'd like to continue. Okay. As quickly as possible. Because I think the rationale of the decision maker, notwithstanding the facts that are set forth and argued specifically in our brief, is something that was not argued in the brief, that in order to address the second factor that was used by the decision maker, that the complainants claimed that Foster was overbearing and intimidating, Ms. Dash specifically said on testimony, in her testimony on page 73, that she was never threatened or intimidated. Foster was known to give people hugs on page 65, that she did not feel threatened by it on page 65. And that was the only specification with regard to Ms. Dash of the allegations concerning Mr. Foster. With respect to Ms. Santiago, page 58 of the transcript, Colonel Etheridge stated that he believed the parties were engaged in a relationship. Ms. Santiago testified on page 111, that the relationship ended by her choice because she was physically disappointed that she was not fulfilled by Mr. Foster. That doesn't sound like someone who was threatened by Mr. Foster, but his return to the environment would not have caused a rift that required the removal of Mr. Foster. And lastly, in the specifications of Colonel Etheridge concerning his lost confidence in the ability to testify in court, the only way that that could reasonably apply to Foster would be if it also reasonably applied to Ms. Santiago, who clearly lied. And she admitted that she lied. That in order to examine his testimony, the only factor concerning Foster that addressed the concerns of his truthfulness went to the question of whether or not he engaged in sexual relations with Ms. Santiago. There is nothing else in the record that addresses the question of Mr. Foster's truthfulness. I'll remain. Thank you. We'll give you two minutes on your rebuttal, Mr. Chairman. Thank you, Your Honor. We'll hear from the government now. Mr. Dunn. Thank you, Your Honor. May it please the Court, Your Honors, this case is simply about credibility determinations made by the administrative judge. The administrative judge determined that Ms. Dock and Ms. Santiago were far more credible witnesses than Mr. Foster. On appeal, Mr. Foster only challenges the testimony of Ms. Santiago. In his appellate briefs, he makes no challenge to the testimony or the findings based on the testimony of Ms. Dock. He also talks about Mr. Johnson's testimony, doesn't he? Yes, Your Honor. So what about that? I mean, it appears that the A.J. really didn't consider to give any credit to Mr. Johnston, right? Your Honor, I would disagree with that because the administrative judge, although she did not discuss the testimony of Mr. Johnston, the testimony that's in the record, relied upon by Mr. Foster, only goes to whether there was a flirtatious relationship in the workplace between Mr. Foster and Ms. Santiago. It doesn't discredit her testimony relating to the allegations at issue, specifically the charges that were made against him. And he was a contract employee working in close vicinity to their desk, and the only thing he alleged at his testimony was that he saw her sitting on his lap. The statement that the appellant relies upon... The appellant asserts that Mr. Johnston's testimony contradicted that of Ms. Santiago because Ms. Santiago... Well, the appellant alleges that Ms. Santiago stated in her sworn statement that their relationship ended in October 2006. That statement is not supported by any citation to the administrative record. There's no citation following it. There's nothing in the record that would contradict the testimony of Ms. Santiago. There's no statement that the appellant relies upon. There's no citation to that. So, Your Honor, Mr. Johnston's testimony does not make Ms. Santiago's testimony inherently improbable. It does not, in fact, contradict it with respect to any of the allegations at issue. On appeal, the only challenge he makes to Ms. Santiago's testimony are two very discreet issues. And what about this point? As I understand it, and correct me if you understood it differently, but as I understood Mr. Thompson to be saying that although the charge here was unbecoming conduct in the workplace, the thrust of it or the meat of it was allegations of sexual harassment. And what I heard him saying is that there doesn't seem to be evidence of sexual harassment, at least as far as the relationship with Ms. Sergeant Santiago was concerned. It seemed, to a large extent, to be consensual. What is your response to that? Your Honor, on appeal, Mr. Foster never made that argument. That's a brand-new argument today in court. But do you understand that's what he said here? I understand that's what he's arguing, but I just want to note for the record that Mr. Foster has never made that argument on appeal to this court in any of the briefs. Mr. Foster did not file a reply brief. In his initial brief, that argument was not made. So that's a brand-new argument today. And also, Your Honor, I don't think that conduct unbecoming can necessarily not include allegations that are sexual in nature. Here, Your Honor, Mr. Foster was engaged in conduct at the workplace relating to two employees, Ms. Santiago and Ms. Dock. On appeal, Mr. Foster does not challenge the allegations relating to Ms. Dock. Those allegations, just to be specific, are that he asked her if she was wearing lace, he searched for her name on Google and said that he found a naked woman on the Internet and wondered if it was her, he told her that he'd see her at the house tonight in front of other employees, he hugged her on a daily basis. These allegations are not contested here. And the court, on that basis alone, can affirm. And Mr. Foster does not assert on appeal that that basis alone is insufficient to find conduct unbecoming. You would say whether or not that would rise to the level of harassment as a matter of law, it's clearly inappropriate conduct in the workplace. Yes, Your Honor, it's conduct unbecoming. Yeah, but I'm not sure exactly this was his argument, but as I understood it, at least, if you look at the notice of proposed removal and it talks about the standards governing your conduct, it does cite something called AR 600-20, which is a provision that goes to sexual harassment. It's not conduct unbecoming, it's sexual harassment, right? Your Honor, I don't have that provision. I understand... It's in your brief. Okay, okay. Page A3. Your Honor, those were the charges that were made and, I guess, the statements that were made by the agency. The administrative judge did not make any findings relating to sexual harassment. The evidence was sexual in nature. It's hard to separate the two, but here the allegations at issue were conduct unbecoming. Your Honors, the two minor issues that Mr. Foster raises relate to statements made during the investigation in a sworn statement by Ms. Santiago. The first of those statements were... The first statement was that she stated in her sworn declaration that they developed a friendship, while at the hearing she stated that they had a flirtatious relationship. Your Honors, these are not mutually exclusive. These are not exclusive characterizations of a relationship. These are not inconsistent statements. The second statement relates to a memo that she wrote to the file during, I believe it was February of 2006. In that memo, she stated that Ms. Dock approached her to discuss issues relating to Mr. Foster. At the hearing, she clarified that Ms. Dock was walking by her office and Ms. Santiago asked her whether the rumors she had heard were true relating to Mr. Foster. Neither of these issues make Ms. Santiago's testimony relating to the facts at issue inherently improbable. There's nothing inconsistent. There's no exaggeration, no self-contradiction. Mr. Foster has a history of this behavior. He was counseled on several occasions by Colonel Etheridge when he was stationed at the CITF. Based on his conduct, he should not be a federal employee, much less a federal investigator, a special agent. Therefore, we respectfully request that the agency's findings be upheld, Your Honors. Thank you, Mr. Dunn. Thank you. Mr. Thompson, as I said, you have two minutes for rebuttal. Thank you, Your Honor. First, with respect to the statement concerning Ms. Dock, I think we are really limited in what they alleged had occurred. With respect to the Googling, on page 69 of the transcript, it's clear that she brought the issue up of what was happening.  I hear you're talking about a picture. In fact, going back in that same page, when Mr. Johnston testified on page 124, that when the issue came up, they were going to a party that Ms. Dock had invited them to. They reviewed the website that Ms. Dock left as a link to the party that she was having, and specifically, she brought up the issue later. With respect to the pistol range, there was absolutely nothing sexual about this statement. And if these are issues that are going to conduct unbecoming an officer, at least with respect to Specification 1, Charge 1, there is nothing that is either indecent or immoral, which if we're going to follow AR 690 through 700, which Colonel Etheridge cites as his basis for his removal decision, there is nothing that would go forward to what the statute allows him to make a determination on. With respect to Ms. Santiago's statements, I think it's very clear that if she lied in the beginning about how this began, and her relationship, and the nature of the relationship that was going on, she specified why the relationship ends, it appears that this is a disgruntled formal paramour who and marched it through the system without adequate safeguards. The administrative law judge's failure to examine these factors constitutes a reversible error in a context that she was not permitted, that rather, she did not reach any conclusions concerning the rationale of the decision maker for his removal decision. Thank you. Thank you, Mr. Thompson.